IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TFG - NEW JERSEY, L.P.,<br><br>　　　Plaintiff,<br><br><br><br><br>　　　vs.<br><br><br>MANTIFF JACKSON NATIONAL HOSPITALITY LLC, FALGUN R. DHARIA, PARU F. DHARIA, MANTIFF MANAGEMENT, INC., PRIORITY OUTSOURCE, INC. dba GCR CAPITAL, JOHN B. GRANT, LARRY CARVER, CARVER & ASSOCIATES, INC., and DOES 1 - 10,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE<br><br><br><br><br>Case No. 2:08-CV-361 TS |

This matter is before the Court on the Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue, filed individually by Defendants Larry E. Carver ("Carver"),[1] Carver & Associates ("C&A"),[2] John B. Grant ("Grant"),[3] and Priority Outsource, Inc. d/b/a GCR Capital

---

[1]Docket No. 7.

[2]Docket No. 9.

[3]Docket No. 3.

("GCR").[4]  Defendants claim that Plaintiff TFG - New Jersey, L.P. has failed to show that each Defendant had sufficient minimum contacts with the State of Utah, as required by the Due Process Clause of the Fourteenth Amendment.  Defendants also claim that Plaintiff has failed to show that a "substantial part" of the events or omissions giving rise to the cause of action occurred in this judicial district, as required by 28 U.S.C. § 1391.

For the reasons described below, each Defendant's Motion to Dismiss will be denied.

## I.  STANDARD OF REVIEW

The question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction is decided on the particular facts of each case.[5] Plaintiff has the burden of establishing specific personal jurisdiction over each Defendant, individually, though Plaintiff need make only a prima facie showing.[6]  Plaintiff may meet its burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant,"[7] and all factual disputes are resolved in favor of Plaintiff.[8]  In order to defeat a prima facie showing of jurisdiction, Defendant must demonstrate that the presence of some other consideration would render jurisdiction unreasonable.[9]

---

[4]Docket No. 5.

[5]*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 120 F.3d 453, 456 (10th Cir. 1996) .

[6]*AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).

[7]*TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007).

[8]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).

[9]*TH Agriculture & Nutrition, LLC*, 488 F.3d at 1286.

Under 28 U.S.C. § 1391(a), venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." The Court must decide whether each Defendant's activities connected to the State of Utah played a substantial role in the circumstances leading to Plaintiff's claims.[10] The statute does not require that the Court determine the *best* venue for the action,[11] merely whether venue is proper in this district, and venue may be proper even if contacts with another district were more substantial.[12]

A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue or personal jurisdiction. By considering documents outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(2), the Court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment."[13]

## II.  FACTUAL BACKGROUND

The following facts are taken from the pleadings and the parties' submissions in connection with the Motions to Dismiss. Plaintiff is a Utah limited partnership, with its sole place of business in the State of Utah. Defendant C&A is a Georgia corporation, with its sole place of business in the State of Georgia. Defendant Carver is C&A's President. Defendant GCR is a Florida corporation, with its sole place of business in the State of Florida. Defendant Grant is the Vice-President of GCR.

---

[10]*Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F.Supp.2d 1051, 1060 (D. Kan. 2006).

[11]*Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992).

[12]*Mohr*, 434 F.Supp.2d at 1060.

[13]*Flynn v. Ohio Building Restoration, Inc.*, 260 F.Supp.2d 156, 161 (D.D.C. 2003).

Plaintiff engages in finance leasing, where Plaintiff purchases equipment for the sole purpose of leasing it to a predetermined lessee. Plaintiff had reached an agreement with Defendants Mantiff Jackson National Hospitality LLC, Falgun R. Dharia, and Paru F. Dharia (the "Lessees"), with Mantiff Management, Inc., as guarantor ("Guarantor"). The agreement was brokered by GCR and Grant, as GCR's authorized representative. The agreement provided that Plaintiff would purchase certain equipment for a hotel and lease it to the Lessees. Lessees provided Plaintiff with a list of the equipment they wished to lease, but Plaintiff refused to purchase the equipment because it was all greater than 90 days old. The Lessees, GCR and Grant then arranged with C&A and Carver to create allegedly fictitious lists of new equipment, so that Plaintiff would provide funding, which would then be used to finance the older equipment that Plaintiff had already rejected.

Grant and others with GCR communicated with Plaintiff extensively during the negotiation process, forwarding to Plaintiff via e-mail many of the documents Plaintiff relied upon in entering into the agreement, including certain documents signed by Grant and financial statements for the Lessees and Guarantor. Grant also instructed C&A and Carver to create allegedly fictitious invoices to induce Plaintiff to sign the agreement. Carver, on behalf of C&A, and at the direction of the other Defendants, created the allegedly fictitious invoices, which indicate that the person to whom C&A would be selling the allegedly fictitious equipment was a Utah entity, and that the equipment would be sent to a Utah address. Carver also provided information and wire instructions so that payment could be made by Plaintiff. After executing the agreement, Plaintiff wired the amount of $532,153.53 to C&A on May 9, 2007.

Defendants claim that they remained in their respective states of Florida and Georgia, and only had incidental contact with the State of Utah, through e-mails and phone calls. They argue that such limited contacts cannot be the foundation for personal jurisdiction. They also argue that venue

4

is improper because all of their actions were taken in either Florida or Georgia, not in Utah.  Plaintiff responds that Defendants knew they were creating documents for a transaction that would result in Plaintiff transferring money out of the State of Utah and allegedly fictitious equipment being "shipped" to Utah.

## III.  DISCUSSION

The Court must make a distinct and separate determination as to whether jurisdiction and venue is appropriate for each of the four Defendants.  In order for the Court to have personal jurisdiction over Defendants, Plaintiff must show that jurisdiction is legitimate under Utah law, and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.[14]  Utah's long-arm statute is coterminous with the due process clause,[15] so the Court need only conduct the due process inquiry.[16]

There is no allegation that general jurisdiction would be proper in this case, so the due process inquiry will focus on specific jurisdiction.  Specific jurisdiction requires Plaintiff to show that: (1) each Defendant has the requisite minimum contacts with the State of Utah; and (2) personal jurisdiction over each Defendant does not offend traditional notions of fair play and substantial justice.[17]  The  second part of the test is essentially a test of how reasonable an exercise of personal

---

[14]*Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).

[15]*MFS Series Trust III v. Grainger*, 96 P.3d 927, 932 (Utah 2004).

[16]*Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F.Supp.2d 1219, 1219 (D. Utah 2005).

[17]*TH Agriculture & Nutrition, LLC*, 488 F.3d at 1287.

jurisdiction is, and the weaker the Plaintiff's showing on minimum contacts, the less each Defendant need show in terms of unreasonableness to defeat jurisdiction.[18]

Defendants will have minimum contacts with the State of Utah if they "should reasonably [have anticipated] being haled into court there."[19]  "A defendant may reasonably anticipate being subject to suit in the forum state if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[20]  The Tenth Circuit has held that purposeful direction exists where there is: "(a) an intentional action . . ., that was (b) expressly aimed at the forum state . . ., with (c) knowledge that the brunt of the injury would be felt in the forum state."[21]  The Court must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[22]

Before the Court is able to exercise personal jurisdiction over each of the Defendants, Plaintiff must also show that such jurisdiction would not offend traditional notions of fair play and substantial justice, or in other words, that the exercise of personal jurisdiction is reasonable.  In order to determine whether the exercise of personal jurisdiction is reasonable, the Court must weigh five factors: (1) the burden on the Defendants; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's

---

[18]*Id.*

[19]*World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

[20]*Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 472 (1985).

[21]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

[22]*Burger King Corp.*, 471 U.S. at 479.

interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[23]

In making a determination on venue, the Court need not declare its opinion regarding the *best* venue, but merely whether this is a *proper* venue for the case.

A.     JOHN B. GRANT

      1.     <u>Personal Jurisdiction</u>

      a.     <u>Minimum Contacts</u>

Grant was directly involved in the negotiations between Plaintiff, Lessees, and Guarantor. Grant had multiple conversations, via phone and e-mail, with the principals of Plaintiff, and knew that Plaintiff was a Utah entity. After Plaintiff informed Grant that Plaintiff was unwilling to finance old equipment, Grant contacted C&A and asked them to participate in the transaction. Grant instructed them to create invoices for equipment to be sold to Plaintiff and leased to Lessees. Grant was aware that C&A had no such equipment for sale, but was intending to facilitate the financing with fictitious invoices. Grant provided C&A with Plaintiff's Utah address and instructed C&A to put that address on the invoices.

The Court finds, for the purposes of establishing personal jurisdiction, that Grant knew that Plaintiff was a Utah entity, and that the money to pay for the fictitious equipment would be wired from Plaintiff's accounts in Utah. Grant took intentional action expressly aimed at Utah and with the knowledge that the brunt of the injury would be felt in Utah. Therefore, the Court finds that Grant established the requisite minimum contacts with Utah because he purposefully directed his actions in this case to Utah.

---

[23]*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000).

b.    <u>Reasonableness of Personal Jurisdiction</u>

The first and third reasonableness factors do not weigh in favor of either party, for while there is a burden on Grant in having to defend himself in the State of Utah, there would be an equivalent burden on Plaintiff in having to litigate in the State of Florida, where Grant resides. It is likely that the witnesses which will be required to give testimony in this case are dispersed between the States of Utah, New Jersey, Georgia, and Florida, so that any choice of venue is likely to impose an equivalent burden on some party.

The second reasonableness factor, the forum state's interest in resolving the dispute, weighs in favor of Plaintiff, for the State of Utah clearly has an interest in protecting its citizens from the type of fraudulent business practices alleged in this case.[24] The agreement which was the underlying source of all of the allegations in this case is governed by Utah law, and the injuries that resulted from Grant's allegedly tortious activities were felt in the State of Utah, giving Utah a manifest interest in providing Plaintiff with a convenient forum for pursuing redress.

The fourth factor asks whether Utah is the most efficient place to litigate this dispute.[25] "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum state's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[26] As noted, the witnesses which will be required to testify are likely split between the various states of the parties. However, it is likely that Utah law will govern the majority

---

[24]*TH Agriculture & Nutrition, LLC*, 488 F.3d at 1293. *See also Burger King Corp.*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

[25]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (1998).

[26]*Id.*

of the claims involved in the lawsuit,[27] and the wrong underlying the lawsuit occurred in the State of Utah.  Finally, personal jurisdiction over Defendants is necessary to prevent piecemeal litigation, because if personal jurisdiction over Defendants is not exercised by the Court, Plaintiff will likely be required to file a lawsuit against GCR and Grant in Florida, against C&A and Carver in Georgia, along with maintaining this litigation against Lessees and Guarantor in Utah.  The fourth factor therefore weighs heavily in favor of Plaintiff.

The fifth factor, whether exercise of personal jurisdiction by the Court "affects the substantive policy interests of other states,"[28] does not weigh in favor of either party.  Grant has offered no argument that the substantive policy interests of the State of Florida would be affected by the outcome of this trial.  The Court will not engage in speculation as to the interests of the State of Florida, and concludes that its interest will not be affected by personal jurisdiction in this case.

The Court finds that the balance of the five factors weighs in favor of Plaintiff, and that personal jurisdiction in this case is reasonable.  Personal jurisdiction in this case also does not violate the due process clause of the Fourteenth Amendment.  Plaintiff has made out a prima facie case for personal jurisdiction over Grant, and Grant has not demonstrated the presence of any other consideration which would render jurisdiction unreasonable.  The Court will therefore deny Grant's Motion to Dismiss for lack of personal jurisdiction.

---

[27]Defendants have failed to offer any legal argument against applying Utah law to the facts of this case.

[28]*Id.*

2.    <u>Venue</u>

Venue is proper in this case because Grant's activities connected to the State of Utah played a substantial role in the circumstances leading to Plaintiff's claims.[29]  Plaintiff's claims arise from the actions of Grant in negotiating an allegedly fraudulent contract, and from assisting Carver and C&A in creating allegedly false invoices which were delivered to Plaintiff in Utah, in expectation that Plaintiff in Utah would wire funds from a Utah bank account to Defendants.  The Court finds that those actions are sufficiently connected with the State of Utah, and played a primary role in the Plaintiff alleged injuries, making venue proper here.

B.    PRIORITY OUTSOURCE, INC. dba GCR CAPITAL

1.    <u>Personal Jurisdiction</u>

a.    <u>Minimum Contacts</u>

GCR was the entity responsible for facilitating the transaction between Plaintiff and Lessees and Guarantor.  Through its principal, Grant, GCR attempted to convince Plaintiff to finance old equipment, and when Plaintiff refused, GCR found another entity, C&A, which was willing to create fictitious invoices intended to convince Plaintiff to finance the old equipment without Plaintiff's knowledge.  GCR communicated regularly with Plaintiff during the negotiations, and those communications were directed to Plaintiff in Utah.  When the invoices were prepared by C&A and Carver, they were submitted to GCR, who then transmitted them to Plaintiff in Utah.

The Court finds, for the purposes of establishing personal jurisdiction, that GCR knew that Plaintiff was a Utah entity, and that the money to pay for the fictitious equipment would be wired from Plaintiff's accounts in Utah.  GCR took intentional action expressly aimed at Utah and with

---

[29]*Mohr*, 434 F.Supp.2d at 1060.

the knowledge that the brunt of the injury would be felt in Utah. Therefore, the Court finds that GCR established the requisite minimum contacts with Utah because it purposefully directed its actions in this case to Utah.

      b.    <u>Reasonableness of Personal Jurisdiction</u>

The first and third reasonableness factors do not weigh in favor of either party, for while there is a burden on GCR in having to defend itself in the State of Utah, there would be an equivalent burden on Plaintiff in having to litigate in the State of Florida, where GCR is a resident. It is likely that the witnesses which will be required to give testimony in this case are dispersed between the States of Utah, New Jersey, Georgia, and Florida, so that any choice of venue is likely to impose an equivalent burden on some party.

The second reasonableness factor weighs in favor of Plaintiff, for the State of Utah clearly has an interest in protecting its citizens from the type of fraudulent business practices alleged in this case. The agreement which was the underlying source of all of the allegations in this case is governed by Utah law, and the injuries that resulted from the allegedly tortious activities of GCR were felt in the State of Utah, giving Utah a manifest interest in providing Plaintiff with a convenient forum for pursuing redress.

The fourth reasonableness factor weighs heavily in favor of Plaintiff. As noted, the witnesses which will be required to testify are likely split between the various states of the parties. However, it is likely that Utah law will govern the majority of the claims involved in the lawsuit, and the wrong underlying the lawsuit occurred in the State of Utah. Finally, personal jurisdiction over Defendants is necessary to prevent piecemeal litigation, because if personal jurisdiction over Defendants is not exercised by the Court, Plaintiff will likely be required to file a lawsuit against

GCR and Grant in Florida, against C&A and Carver in Georgia, along with maintaining this litigation against Lessees and Guarantor in Utah.

The fifth reasonableness factor does not weigh in favor of either party. GCR has offered no argument that the substantive policy interests of the State of Florida would be affected by the outcome of this trial. The Court will not engage in speculation as to the interests of the State of Florida, and concludes that its interest will not be affected by personal jurisdiction in this case.

The Court finds that the balance of the five factors weighs in favor of Plaintiff, and that personal jurisdiction in this case is reasonable. Personal jurisdiction in this case also does not violate the due process clause of the Fourteenth Amendment. Plaintiff has made out a prima facie case for personal jurisdiction over GCR, and GCR has not demonstrated the presence of any other consideration which would render jurisdiction unreasonable. The Court will therefore deny GCR's Motion to Dismiss for lack of personal jurisdiction.

2.     Venue

Venue is proper in this case because GCR's activities connected to the State of Utah played a substantial role in the circumstances leading to Plaintiff's claims. Plaintiff's claims arise from the actions of GCR in negotiating an allegedly fraudulent contract, and from assisting Carver and C&A in creating allegedly false invoices which were delivered to Plaintiff in Utah, in expectation that Plaintiff in Utah would wire funds from a Utah bank account to Defendants. The Court finds that those actions are sufficiently connected with the State of Utah, and played a primary role in the Plaintiff alleged injuries, making venue proper here.

C.      LARRY CARVER

    1.      <u>Personal Jurisdiction</u>

    a.      <u>Minimum Contacts</u>

Carver was approached by GCR and Grant and asked to provide invoices for a transaction. Carver knew that the items on the invoice were items he did not possess, and therefore could not sell, but he agreed to create the invoices. Carver created the invoices, which included Plaintiff's Utah address as the address of the Buyer of the items, as well as the Lessees' Utah address, where the allegedly fictitious equipment was to be shipped. Carver also prepared wiring instructions, so that the money could be wired from Plaintiff's Utah bank account to C&A, Carver's employer. Carver sent the wiring instructions and invoices to GCR and Grant, and GCR sent the wiring instructions and invoices to Plaintiff in Utah.

The Court finds, for the purposes of establishing personal jurisdiction, that Carver knew that Plaintiff was a Utah entity, and that the money to pay for the fictitious equipment would be wired from Plaintiff's accounts in Utah. Carver took intentional action expressly aimed at Utah, by creating the fictitious invoices and wiring instructions, all with the knowledge that the brunt of the injury would be felt in Utah. Therefore, the Court finds that Carver established the requisite minimum contacts with Utah because he purposefully directed his actions in this case to Utah.

    b.      <u>Reasonableness of Personal Jurisdiction</u>

The first and third reasonableness factors do not weigh in favor of either party, for while there is a burden on Carver in having to defend himself in the State of Utah, there would be an equivalent burden on Plaintiff in having to litigate in the State of Georgia, where Carver resides. It is likely that the witnesses which will be required to give testimony in this case are dispersed

between the States of Utah, New Jersey, Georgia, and Florida, so that any choice of venue is likely to impose an equivalent burden on some party.

The second reasonableness factor weighs in favor of Plaintiff, for the State of Utah clearly has an interest in protecting its citizens from the type of fraudulent business practices alleged in this case. The agreement which was the underlying source of all of the allegations in this case is governed by Utah law, and the injuries that resulted from the allegedly tortious activities of the Defendants were felt in the State of Utah, giving Utah a manifest interest in providing Plaintiff with a convenient forum for pursuing redress.

The fourth reasonableness factor weighs heavily in favor of Plaintiff. As noted, the witnesses which will be required to testify are likely split between the various states of the parties. However, it is likely that Utah law will govern the majority of the claims involved in the lawsuit, and the wrong underlying the lawsuit occurred in the State of Utah. Finally, personal jurisdiction over Defendants is necessary to prevent piecemeal litigation, because if personal jurisdiction over Defendants is not exercised by the Court, Plaintiff will likely be required to file a lawsuit against GCR and Grant in Florida, against C&A and Carver in Georgia, along with maintaining this litigation against Lessees and Guarantor in Utah. The fourth factor therefore weighs heavily in favor of Plaintiff.

The fifth reasonableness factor does not weigh in favor of either party. Defendants have offered no argument that the substantive policy interests of the State of Georgia would be affected by the outcome of this trial. The Court will not engage in speculation as to the interests of the State of Georgia, and concludes that its interest will not be affected by personal jurisdiction in this case.

The Court finds that the balance of the five factors weighs in favor of Plaintiff, and that personal jurisdiction in this case is reasonable. Personal jurisdiction in this case also does not violate

14

the due process clause of the Fourteenth Amendment.  Plaintiff has made out a prima facie case for personal jurisdiction over Carver, and Carver has not demonstrated the presence of any other consideration which would render jurisdiction unreasonable.  The Court will therefore deny Carver's Motion to Dismiss for lack of personal jurisdiction.

        2.     <u>Venue</u>

Venue is proper in this case because Carver's activities connected to the State of Utah played a substantial role in the circumstances leading to Plaintiff's claims.  Plaintiff's claims arise from the actions of Carver in creating allegedly false invoices which were delivered to Plaintiff in Utah, in expectation that Plaintiff in Utah would wire funds from a Utah bank account to Defendants.  The Court finds that those actions are sufficiently connected with the State of Utah, and played a primary role in the Plaintiff alleged injuries, making venue proper here.

D.     CARVER & ASSOCIATES, INC.

        1.     <u>Personal Jurisdiction</u>

        a.     <u>Minimum Contacts</u>

C&A, through its principal Carver, agreed to provide invoices for equipment which it knew it did not possess and could not sell.  Through it's principal, Carver, C&A prepared the invoices. On each of the invoices, C&A listed Plaintiff as the purchaser, with a Utah address, and listed Lessees' Utah address as the address to which the allegedly fictitious equipment would be shipped. C&A also provided wiring instructions to C&A, so that funds could be wired from Plaintiff's Utah bank account to C&A.  Once the transaction between Plaintiff, Lessees, and Guarantor was completed, C&A received the funds from Plaintiff's Utah bank, and either kept the funds or transferred them to other participants in the transaction.

The Court finds, for the purposes of establishing personal jurisdiction, that C&A knew that Plaintiff was a Utah entity, and that the money to pay for the fictitious equipment would be wired from Plaintiff's accounts in Utah.  C&A took intentional action expressly aimed at Utah, by creating the fictitious invoices and wiring instructions, all with the knowledge that the brunt of the injury would be felt in Utah.  Therefore, the Court finds that C&A established the requisite minimum contacts with Utah because it purposefully directed his actions in this case to Utah.

        b.    <u>Reasonableness of Personal Jurisdiction</u>

The first and third reasonableness factors do not weigh in favor of either party, for while there is a burden on C&A in having to defend itself in the State of Utah, there would be an equivalent burden on Plaintiff in having to litigate in either the State of Georgia, where C&A is a resident.  It is likely that the witnesses which will be required to give testimony in this case are dispersed between the States of Utah, New Jersey, Georgia, and Florida, so that any choice of venue is likely to impose an equivalent burden on some party.

The second reasonableness factor weighs in favor of Plaintiff, for the State of Utah clearly has an interest in protecting its citizens from the type of fraudulent business practices alleged in this case.  The agreement which was the underlying source of all of the allegations in this case is governed by Utah law, and the injuries that resulted from C&A's allegedly tortious activities were felt in the State of Utah, giving Utah a manifest interest in providing Plaintiff with a convenient forum for pursuing redress.

The fourth reasonableness factor weighs heavily in favor of Plaintiff.  As noted, the witnesses which will be required to testify are likely split between the various states of the parties.  However, it is likely that Utah law will govern the majority of the claims involved in the lawsuit, and the wrong underlying the lawsuit occurred in the State of Utah.  Finally, personal jurisdiction over

Defendants is necessary to prevent piecemeal litigation, because if personal jurisdiction over Defendants is not exercised by the Court, Plaintiff will likely be required to file a lawsuit against GCR and Grant in Florida, against C&A and Carver in Georgia, along with maintaining this litigation against Lessees and Guarantor in Utah.

The fifth reasonableness factor does not weigh in favor of either party.  Defendants have offered no argument that the substantive policy interests of the State of Georgia would be affected by the outcome of this trial.  The Court will not engage in speculation as to the interests of the State of Georgia, and concludes that its interest will not be affected by personal jurisdiction in this case.

The Court finds that the balance of the five factors weighs in favor of Plaintiff, and that personal jurisdiction in this case is reasonable.  Personal jurisdiction in this case also does not violate the due process clause of the Fourteenth Amendment.  Plaintiff has made out a prima facie case for personal jurisdiction over C&A, and C&A has not demonstrated the presence of any other consideration which would render jurisdiction unreasonable.  The Court will therefore deny C&A's Motion to Dismiss for lack of personal jurisdiction.

2.    Venue

Venue is proper in this case because Carver's activities connected to the State of Utah played a substantial role in the circumstances leading to Plaintiff's claims.  Plaintiff's claims arise from the actions of Carver in creating allegedly false invoices which were delivered to Plaintiff in Utah, in expectation that Plaintiff in Utah would wire funds from a Utah bank account to Defendants.  The Court finds that those actions are sufficiently connected with the State of Utah, and played a primary role in the Plaintiff alleged injuries, making venue proper here.

IV.  CONCLUSION

It is therefore

17

ORDERED that Defendant John B. Grant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket No. 3) is DENIED.  It is futher

ORDERED that Defendant Priority Outsource, Inc. d/b/a GCR Capital's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket No. 5) is DENIED.  It is further

ORDERED that Defendant Larry Carver's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket No. 7) is DENIED.  It is further

ORDERED that Defendant Carver & Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket No. 9) is DENIED.

DATED   October 28, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

18